# EXHIBIT 7



RECEIVED
MAY 02 2018

ALTERNATIVE DISPUTE
RESOLUTION OFFICE

## HEALTH CARE ALTERNATIVE DISPUTE RESOLUTION OFFICE
6 St. Paul Street, Suite 1501
Baltimore, Maryland 21202-1608
(410) 767-8200

### CLAIM FORM          HCA NO.

**CLAIMANT(S)**
DANIEL B. MACEWEN, PR of the Estate of
PAMELA S. PEITZ, Deceased
Name
196 Chesley Drive
Street Address
Falling Waters, WV 25419
City, State, Zip Code

BARRETT M. PEITZ, Surviving son of
PAMELA S. PEITZ, Deceased
Name
350 Hastings Street
Street Address
Pittsburgh, PA 15206
City, State, Zip Code

Name
Street Address
City, State, Zip Code

**HEALTH CARE PROVIDER(S)**
MEDICAL PRACTICES OF ANTIETAM, LLC t/a
MERITUS CENTER FOR BREAST HEALTH
Name
11110 Medical Campus Road
Street Address
Hagerstown, MD 21742
City, State, Zip Code

ASSOCIATED RADIOLOGISTS, P.A.
Name
251 Antietam Street
Street Address
Hagerstown, MD 21740
City, State, Zip Code

DIAGNOSTIC IMAGING SERVICES, LLC
Name
11110 Medical Campus Road, Suite 229
Street Address
Hagerstown, MD 21742
City, State, Zip Code

(1) This claim is filed pursuant to Title 3, Subtitle 2A of the Courts Article. The damages claimed are in excess of $30,000.00, and the appropriate venue is: U.S. District Court for the District of Maryland

(2) The basis of the claim is described on the page(s) attached hereto.

(3) The resolution of the claim will involve particular expertise in this area of specialty 084-Oncology, Medical 050-Radiology, Diagnostic 058-Surgery, General
(PLEASE SEE REVERSE SIDE FOR AREAS OF CONCENTRATION)

**WARNING:** Each Claimant has been advised that he/she may be held civilly liable for part or all the Costs resulting from the filing of th
claim, whether it is won or lost; this would be an individual and personal responsibility.

ATTORNEY FOR CLAIMANT(S)

_____ AMR
Signature  PAUL D. BEKMAN

300 W. Pratt Street, Suite 450
Street Address

Baltimore, MD 21201
City, State, Zip Code

(410) 539-6633
Telephone Number

CLAIMANT(S)

_____ AMR
Signature for each Claimant DANIEL B. MACEWEN

_____ AMR
BARRETT M. PEITZ



RECEIVED
MAY 02 2018
HEALTH CARE
ALTERNATIVE DISPUTE
RESOLUTION OFFICE

### HEALTH CARE ALTERNATIVE DISPUTE RESOLUTION OFFICE
6 St. Paul Street, Suite 1501
Baltimore, Maryland 21202-1608
(410) 767-8200

### CLAIM FORM          HCA NO.

**CLAIMANT(S)**

DANIEL B. MACEWEN (continued)
Name

Street Address

City, State, Zip Code

Name

Street Address

City, State, Zip Code

Name

Street Address

City, State, Zip Code

**HEALTH CARE PROVIDER(S)**

NARASIM S. MURTHY, M.D.
Name   Associated Radiologists, P.A.
322 East Antietam Street, Suite 106
Street Address
Hagerstown, MD 21740
City, State, Zip Code

UNIVERSITY OF MARYLAND MEDICAL CENTER, LLC
Name
22 South Greene Street
Street Address
Baltimore, MD 21201
City, State, Zip Code

SUSAN B. KESMODEL, M.D.
Name   University of Miami
1120 NW 14th Street, #410T
Street Address
Miami, FL 33136
City, State, Zip Code

(1) This claim is filed pursuant to Title 3, Subtitle 2A of the Courts Article. The damages claimed are in excess of $30,000.00, and the appropriate venue is:

(2) The basis of the claim is described on the page(s) attached hereto.

(3) The resolution of the claim will involve particular expertise in this area of specialty
(PLEASE SEE REVERSE SIDE FOR AREAS OF CONCENTRATION)

WARNING: Each Claimant has been advised that he/she may be held civilly liable for part or all the Costs resulting from the filing of this claim, whether it is won or lost; this would be an individual and personal responsibility.

**ATTORNEY FOR CLAIMANT(S)**

Signature

Street Address

City, State, Zip Code

Telephone Number

**CLAIMANT(S)**

Signature for each Claimant



RECEIVED
MAY 02 2018
HEALTH CARE
ALTERNATIVE DISPUTE
RESOLUTION OFFICE

HEALTH CARE ALTERNATIVE DISPUTE RESOLUTION OFFICE
6 St. Paul Street, Suite 1501
Baltimore, Maryland 21202-1608
(410) 767-8200

## CLAIM FORM          HCA NO.:

**CLAIMANT(S)**

DANIEL B. MACEWEN, PR of the Estate of
PAMELA S. PEITZ, Deceased
Name
196 Chesley Drive
Street Address
Falling Waters, WV 25419
City, State, Zip Code

BARRETT M. PEITZ, Surviving son of
PAMELA S. PEITZ, Deceased
Name
350 Hastings Street
Street Address
Pittsburgh, PA 15206
City, State, Zip Code

Name

Street Address

City, State, Zip Code

**HEALTH CARE PROVIDER(S)**

MEDICAL PRACTICES OF ANTIETAM, LLC t/a
MERITUS CENTER FOR BREAST HEALTH
Name
11110 Medical Campus Road
Street Address
Hagerstown, MD 21742
City, State, Zip Code

ASSOCIATED RADIOLOGISTS, P.A.
Name
251 Antietam Street
Street Address
Hagerstown, MD 21740
City, State, Zip Code

DIAGNOSTIC IMAGING SERVICES, LLC
Name
11110 Medical Campus Road, Suite 229
Street Address
Hagerstown, MD 21742
City, State, Zip Code

(1) This claim is filed pursuant to Title 3, Subtitle 2A of the Courts Article. The damages claimed are in excess of $30,000.00, and the appropriate venue is: U.S. District Court for the District of Maryland

(2) The basis of the claim is described on the page(s) attached hereto.

(3) The resolution of the claim will involve particular expertise in this area of specialty 084-Oncology, Medical
050-Radiology, Diagnostic
059-Surgery, General
(PLEASE SEE REVERSE SIDE FOR AREAS OF CONCENTRATION)

**WARNING:** Each Claimant has been advised that he/she may be held civilly liable for part or all the Costs resulting from the filing of this claim, whether it is won or lost; this would be an individual and personal responsibility.

**ATTORNEY FOR CLAIMANT(S)**

Signature  PAUL D. BEKMAN  AMR

300 W. Pratt Street, Suite 450
Street Address

Baltimore, MD 21201
City, State, Zip Code

(410) 539-6633
Telephone Number

**CLAIMANT(S)**

Signature for each Claimant  DANIEL B. MACEWEN  AMR

BARRETT M. PEITZ  AMR



RECEIVED
MAY 02 2018
HEALTH CARE
ALTERNATIVE DISPUTE
RESOLUTION OFFICE

## HEALTH CARE ALTERNATIVE DISPUTE RESOLUTION OFFICE
6 St. Paul Street, Suite 1501
Baltimore, Maryland 21202-1608
(410) 767-8200

CLAIM FORM          HCA NO.

| CLAIMANT(S) | HEALTH CARE PROVIDER(S) |
|---|---|
| DANIEL B. MACEWEN (continued) | NARASIM S. MURTHY, M.D. |
| Name | Name Associated Radiologists, P.A. |
| | 322 East Antietam Street, Suite 106 |
| Street Address | Street Address |
| | Hagerstown, MD 21740 |
| City, State, Zip Code | City, State, Zip Code |
| | UNIVERSITY OF MARYLAND MEDICAL CENTER, LL( |
| Name | Name |
| | 22 South Greene Street |
| Street Address | Street Address |
| | Baltimore, MD 21201 |
| City, State, Zip Code | City, State, Zip Code |
| | SUSAN B. KESMODEL, M.D. |
| Name | Name University of Miami |
| | 1120 NW 14th Street, #410T |
| Street Address | Street Address |
| | Miami, FL 33136 |
| City, State, Zip Code | City, State, Zip Code |

(1) This claim is filed pursuant to Title 3, Subtitle 2A of the Courts Article. The damages claimed are in excess of $30,000.00, and the appropriate venue is: _____

(2) The basis of the claim is described on the page(s) attached hereto.

(3) The resolution of the claim will involve particular expertise in this area of specialty _____
(PLEASE SEE REVERSE SIDE FOR AREAS OF CONCENTRATION)

**WARNING:** Each Claimant has been advised that he/she may be held civilly liable for part or all the Costs resulting from the filing of the claim, whether it is won or lost; this would be an individual and personal responsibility.

| ATTORNEY FOR CLAIMANT(S) | CLAIMANT(S) |
|---|---|
| Signature | Signature for each Claimant |
| Street Address | |
| City, State, Zip Code | |
| Telephone Number | |

RECEIVED
MAY 02 2018
HEALTH CARE
ALTERNATIVE DISPUTE
RESOLUTION OFFICE

DANIEL B. MACEWEN,                        *       IN THE
Personal Representative of the Estate of
PAMELA S. PEITZ, deceased                 *       HEALTH CARE
196 Chesley Drive
Falling Waters, West Virginia 25419       *       ALTERNATIVE DISPUTE

and                                       *       RESOLUTION OFFICE

BARRETT M. PEITZ, surviving son of        *       OF MARYLAND
PAMELA S. PEITZ, deceased
350 Hastings Street                       *
Pittsburgh, Pennsylvania 15206                    HCA No.: _____
                                          *

      Claimants

                    *

v.                                        *

MEDICAL PRACTICES OF                      *
ANTIETAM, LLC, t/a MERITUS
CENTER FOR BREAST HEALTH                  *
11110 Medical Campus Road
Hagerstown, Maryland 21742                *

      **Serve On**:                     *
      Joseph P. Ross
      11116 Medical Campus Road         *
      Hagerstown, Maryland 21742

and                                       *

ASSOCIATED RADIOLOGISTS, PA              *
251 Antietam Street
Hagerstown, Maryland 21740               *

      **Serve On**:                     *
      Robert A. Snyder, Jr.
      100 Light Street, 11th Floor      *
      Baltimore, Maryland 21202

and                                       *

DIAGNOSTIC IMAGING SERVICES, LLC
11110 Medical Campus Road, Suite 229
Hagerstown, Maryland 21742               *

      **Serve On**:                     *
      Joseph P. Ross

11116 Medical Campus Road                    *
Hagerstown, Maryland 21742

and                                          *

NARASIM S. MURTHY, M.D.                      *
Associated Radiologists, PA
322 East Antietam Street, Suite 106          *
Hagerstown, Maryland 21740

and                                          *

UNIVERSITY OF MARYLAND                       *
MEDICAL CENTER, LLC
22 South Greene Street                       *
Baltimore, Maryland 21201

   **Serve On:**                         *
   Megan M. Arthur
   250 W. Pratt Street                   *
   24th Floor
   Baltimore, Maryland  21201            *

and                                          *

SUSAN B. KESMODEL, M.D.                       *
University of Miami
1120 NW 14th Street, #410T                   *
Miami, Florida 33136
                                             *
Health Care Providers
                                             *

**************
## STATEMENT OF CLAIM

Claimants, Daniel B. MacEwen, Personal Representative of the Estate of Pamela S. Peitz, deceased, and Barrett M. Peitz, surviving son of Pamela S. Peitz, deceased, through their attorneys, Paul D. Bekman, Aryeh M. Rabinowitz, and Bekman, Marder, and Adkins, LLC, Stephen G. Skinner, and the Skinner Law Firm, sue the Health Care Providers, Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health; Associated Radiologists, PA; Diagnostic

Imaging Services, LLC; Narasim S. Murthy, M.D.; University of Maryland Medical Center, LLC; and Susan B. Kesmodel, M.D., and state as follows:

## JURISDICTION AND VENUE

1.      On or about March 8, 2018, a Statement of Claim (HCA No. 2018-114) alleging medical negligence, along with two Certificates of Qualified Expert and Reports and an Election to Waive Arbitration, were filed on behalf of Ms. Peitz with the Health Claims Alternative Dispute Resolution Office ("HCADRO"). *See* Statement of Claim, Certificates of Qualified Expert and Reports, and Election to Waive Arbitration, attached as **Exhibit 1**.

2.      HCADRO issued an Order of Transfer to the United States District Court for the District of Maryland on March 12, 2018. *See* Order of Transfer, attached as **Exhibit 2**.

3.      After the Statement of Claim was filed, but before the Order of Transfer was issued, on March 9, 2018, Ms. Peitz passed away from the injuries suffered as a result of the medical negligence. *See* Death Certificate, attached as **Exhibit 3**.

4.      Ms. Peitz's partner, Daniel B. MacEwen, was named the Personal Representative of her Estate on April 18, 2018. *See* Letter of Administration, attached **Exhibit 4**.

5.      Because the Order of Transfer was filed on March 12, 2018, the 60-day deadline to file the Complaint in federal court fell on or about May 10, 2018. Therefore, a complaint and election for jury trial was filed in the U.S. District Court on April 24, 2018, regarding the claims that had already been placed before HCADRO. Concurrent with that filing, Mr. MacEwen filed a Suggestion of Death and Motion to Substitute Party Plaintiff.

6.      Claimants Daniel B. MacEwen, Personal Representative of the Estate of Pamela S. Peitz, and Barrett M. Peitz, surviving son of Pamela S. Peitz, deceased, hereby file a Statement of Claim, along with Certificates of Qualified Expert and Reports and an Election to

Waive Arbitration, regarding the survival and wrongful death portions of the claim that had not been addressed in the first HCADRO filing, as Ms. Peitz was still living at that time.

7.    The amount of this claim exceeds Thirty Thousand Dollars ($30,000.00).

8.    Daniel B. MacEwen is the personal representative of the Estate of Pamela S. Peitz. Mr. MacEwen and Ms. Peitz were citizens and residents of West Virginia.

9.    Barrett M. Peitz is the surviving son of Ms. Peitz. Mr. Peitz is a citizen and resident of Pennsylvania.

10.    Venue is proper in the United States District Court for the District of Maryland, as this controversy involves a dispute between citizens of different states.

11.    The Health Care Provider Defendant Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health, is a Maryland limited liability company with its principal office in Hagerstown, Maryland.

12.    At all relevant times, Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health, held itself out to the public, including Ms. Peitz, as a provider of broad range of medical services, including but not limited to the diagnosis and treatment of cancer.

13.    The Health Care Provider Defendant Associated Radiologists, PA, is a Maryland professional corporation with its principal office in Hagerstown, Maryland.

14.    At all relevant times, Associated Radiologists, PA, held itself out to the public, including Ms. Peitz, as a provider of services relating to the field of radiology, including but not limited to radiology related to cancer.

15.    The Health Care Provider Defendant Diagnostic Imaging Services, LLC, is a Maryland limited liability company with its principal office in Hagerstown, Maryland.

16.    At all relevant times, Diagnostic Imaging Services, LLC, held itself out to the public, including Ms. Peitz, as a provider of services relating to the field of radiology, including but not limited to radiology related to cancer.

17.    Narasim S. Murthy, M.D., is a radologist licensed to practice in Maryland. At all relevant times, Dr. Murthy held himself out to the public, and to Ms. Peitz, as an experienced, competent and able radiologist, possessing and providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to such a practice and, as such, owed a duty to Ms. Peitz to render that degree of care and treatment to her which is ordinarily rendered by those who devote special study and attention to the practice of radiology.

18.    At all relevant times, Dr. Murthy held himself out to the public, including to Ms. Peitz, as a provider of services relating to the field of radiology, including but not limited to radiology related to cancer.

19.    At all relevant times, Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health, Associated Radiologists, PA, and Diagnostic Imaging Services, LLC, were acting individually and/or by and through its actual and/or apparent agents, servants, and employees, including but not limited to Dr. Murthy.

20.    The Health Care Provider Defendant University of Maryland Medical Center, LLC, is a Maryland limited liability company corporation with its principal office in Baltimore, Maryland.

21.    At all relevant times, University of Maryland Medical Center, LLC, held itself out to the public, including to Ms. Peitz, as a provider of broad range of medical services, including but not limited to the diagnosis and treatment of cancer.

5

22. Susan B. Kesmodel, M.D., is a surgical oncologist licensed to practice in Maryland, Florida, and Texas. At all relevant times, Dr. Kesmodel held herself out to the public, and to Ms. Peitz, as an experienced, competent and able surgical oncologist, possessing and providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to such a practice and, as such, owed a duty to Ms. Peitz to render that degree of care and treatment to her which is ordinarily rendered by those who devote special study and attention to the practice of surgical oncology.

23. At all relevant times, Dr. Kesmodel held herself out to the public, including to Ms. Peitz, as a provider of services relating to the field of surgical oncology, including but not limited to surgery related to cancer.

24. At all relevant times, Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health, and University of Maryland Medical Center, LLC, were acting individually and/or by and through its actual and/or apparent agents, servants, and employees, including but not limited to Dr. Kesmodel.

**Factual Background**

25. Claimants adopt and incorporate herein all preceding paragraphs.

26. Ms. Peitz was diagnosed with early-stage breast cancer in 2015. There was no evidence of any metastatic disease. She was scheduled to have a lumpectomy and radiation to treat the breast cancer.

27. As part of the preoperative course for the lumpectomy, the surgical oncologist who was treating Ms. Peitz at the Meritus Center for Breast Health, and who was employed by the University of Maryland Medical Center, Dr. Susan Kesmodel, ordered a chest x-ray.

28. The chest x-ray was performed on April 28, 2015. It was read at the Meritus

Center for Breast Health by an employee of Radiology Associates, PA and Diagnostic Imaging

Services, LLC, Dr. Narasim Murthy. Dr. Murthy noted that:

> There is an irregularly marginated nodule seen overlying the
> RIGHT chest on the frontal view. This appears to be located
> posteriorly on the lateral view and is likely within the RIGHT
> lower lobe and measures 2.2 x 2.7 x 3.0 cm.

In his impressions, Dr. Murthy continued that there was a:

> Somewhat cavitary appearing oval poorly defined nodule within
> the RIGHT lower lobe measuring 2.2 x 3 x 2.7 cm. CT chest with
> contrast is suggested for further evaluation.

29.     Despite Dr. Murthy identifying a mass in Ms. Peitz's right lung, and even though

he thought it serious enough to suggest a further CT scan of the chest with contrast to evaluate

the mass, Dr. Murthy, in violation of the standard of care, did not directly communicate his

finding to the ordering physician, Dr. Kesmodel, or to the patient, Ms. Peitz. And, although Dr.

Kesmodel, as the ordering physician, received a written copy of Dr. Murthy's report, as noted on

the face of the report, she did not act in any way to inform Ms. Peitz of Dr. Murthy's findings, or

to conduct further studying and testing of the mass in Ms. Peitz's right lung. This too was in

breach of the standard of care.

30.     Ms. Peitz underwent lumpectomy and radiation for her breast cancer in 2015. She

did not have any further issues relating to her breast cancer.

31.     In April 2017, Ms. Peitz began to have trouble breathing, and developed flu-like

symptoms, a cough, and fatigue. Her primary care physician sent her for a chest x-ray on April

14, 2017. The chest x-ray report compared the findings to the findings of the previous chest x-ray

of April 28, 2015, and noted:

> Nodular mass involving the RIGHT lower lobe is again seen. This
> measures today 3.5 x 3.5 x 3.8 cm. Previously this had measured
> 2.8 x 2.2 x 3.2 cm, increased in size.

7

The impressions noted as well, that there was an:

> Increasing size RIGHT lower lobe pulmonary nodule or mass measuring currently 3.5 x 3.5 x 3.8 cm. Previously, this had measured, 2.8 x 2.2 x 3.2 cm, increased in size. Further evaluation with CT scan with contrast is suggested.

32.     Ms. Peitz underwent a follow-up CT scan of the thorax with contrast on April 19, 2017. The scan found a mass in the superior segment of the lower right lobe measuring about 5 x 2.9 x 3.1 cm. There were also enlarged right hilar (2.4 x 1.8 cm) and subcarinal lymph nodes (2.0 x 1.8 cm and 1.8 x 1.2 cm), a pulmonary nodule in the right lower lobe measuring 7 x 6 mm, and possible atelectasis in the right lung. A biopsy of the masses showed that these lesions were uniquely lung cancer, and not a spreading of Ms. Peitz's earlier breast cancer. The scan also found a sclerotic lesion at L1 that was consistent with metastatic disease.

33.     Subsequent testing showed that the lung cancer had metastasized to Ms. Peitz's spine (L1, L4, and L5, including the destruction of most of the right aspect of the L1 vertebral body), sacrum, and brain (lesions in both cerebellar hemispheres, left occipital lobe, left temporal lobe, right frontal lobe, and right parietal lobe).

34.     Ms. Peitz began radiation therapy with the prognosis that she would die of metastatic lung cancer. If the existence of the mass in her lung had been communicated properly, and the mass had been treated in April 2015, then her chance of survival would have been greater than 50%. By the time that the mass in her lung, and the accompanying metastatic disease, was properly identified and treated in April 2017, her chance of survival was far less than 50%.

35.     Ms. Peitz died from her illness on March 9, 2018.

### COUNT I – SURVIVAL CLAIM – MEDICAL NEGLIGENCE
(Meritus, Associated Radiologists, Diagnostic Imaging Services, and Dr. Murthy)

36.     Claimants adopt and incorporate by reference herein all preceding paragraphs.

37.     At all relevant times, the Health Care Provider Defendants were engaged in a

healthcare provider—patient relationship. As such, the Health Care Provider Defendants owed Ms. Peitz a duty to provide her with the appropriate standard of medical care and treatment of a reasonably prudent health care provider and radiologist, including in the proper communication of the findings on the chest x-ray taken on April 28, 2015.

38.     During the course of their relationship, Dr. Murthy was acting as the actual and/or apparent agent, servant, or employee of Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health, Associated Radiologists, PA, and Diagnostic Imaging Services, LLC, and was acting in the scope of said employment. The Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health, Associated Radiologists, PA, and Diagnostic Imaging Services, LLC Health Care Provider Defendants are therefore vicariously liable for Dr. Murthy's conduct.

39.     The Health Care Provider Defendants breached their aforementioned duty to the Ms. Peitz in that they:

   a.     Failed to properly and directly communicate the findings of the chest x-ray of April 28, 2015, which identified a mass in Ms. Peitz's right lung, to either the ordering physician, Dr. Kesmodel, or to the patient, Ms. Peitz;

   b.     Were otherwise negligent, careless, and reckless.

40.     As a proximate and direct result of the Health Care Provider Defendants' negligence, the mass in Ms. Peitz's right lung was left to grow for two years. This caused Ms. Peitz to suffer irreparable harm, and severe and permanent physical injuries and damages, prior to her death. These damages include the extensive enlargement and growth of the mass in her right lung, and the metastasis of the lesion to her spine, sacrum, and brain, and culminated in her death. If the existence of the mass in her lung had been communicated properly, and the mass had been resected in 2015 when she had early-stage lung cancer, then her chance of survival would have been greater than 50%. By the time that the mass in her lung, and the accompanying

9

metastatic disease, was properly identified and treated in 2017 when she had Stage 4 lung cancer, her chance of survival was far less than 50%. Ms. Peitz incurred increased medical care and treatment, severe pain and suffering, mental anguish, inconvenience and discomfort, lost wages, diminished enjoyment of life, and other damages, prior to her death, due to the negligence of the Health Care Provider Defendants. As a result of Ms. Peitz's death, Claimaints also incurred funeral expenses, which are also claimed as damages.

41.     All of the losses, damages, injuries, sustained by Ms. Peitz, including her death, were directly and proximately caused by the negligence of the Health Care Provider Defendants, without any negligence on the part of Ms. Peitz contributing thereto.

WHEREFORE, Claimant Daniel B. MacEwen, as Personal Representative of the Estate of Pamela S. Peitz, deceased, claims damages against the Health Care Provider Defendants in an amount to be determined by a jury, together with all costs.

## COUNT II – SURVIVAL CLAIM – MEDICAL NEGLIGENCE
(Meritus, University of Maryland Medical Center, and Dr. Kesmodel)

42.     Claimants adopt and incorporate by reference herein all preceding paragraphs.

43.     At all relevant times, the Health Care Provider Defendants were engaged in a healthcare provider—patient relationship. As such, the Health Care Provider Defendants owed Ms. Peitz a duty to provide her with the appropriate standard of medical care and treatment of a reasonably prudent health care provider and surgical oncologist, including in taking proper action based on the findings in chest x-ray reports.

44.     During the course of their relationship, Dr. Kesmodel was acting as the actual and/or apparent agent, servant, or employee of Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health, and University of Maryland Medical Center, LLC, and was acting in the scope of said employment. The Medical Practices of Antietam, LLC, t/a Meritus Center for

Breast Health, and University of Maryland Medical Center, LLC Health Care Provider Defendants are therefore vicariously liable for Dr. Kesmodel's conduct.

45.     The Health Care Provider Defendants breached their aforementioned duty to the Ms. Peitz in that they:

a.     Failed to properly review the findings of the chest x-ray taken on April 28, 2015, which identified a mass in Ms. Peitz's right lung, after ordering the chest x-ray;

b.     Failed to correctly inform and advise Ms. Peitz of the findings of the chest x-ray;

c.     Failed to properly treat the mass in Ms. Peitz's right lung;

d.     Were otherwise negligent, careless, and reckless.

46.     As a proximate and direct result of the Health Care Provider Defendants' negligence, the mass in Ms. Peitz's right lung was left to grow for two years. This caused Ms. Peitz to suffer irreparable harm, and severe and permanent physical injuries and damages, prior to her death. These damages include the extensive enlargement and growth of the mass in her right lung, and the metastasis of the lesion to her spine, sacrum, and brain, and culminated in her death. If the existence of the mass in her lung had been communicated properly, and the mass had been resected in 2015 when she had early-stage lung cancer, then her chance of survival would have been greater than 50%. By the time that the mass in her lung, and the accompanying metastatic disease, was properly identified and treated in 2017 when she had Stage 4 lung cancer, her chance of survival was far less than 50%. Ms. Peitz incurred increased medical care and treatment, severe pain and suffering, mental anguish, inconvenience and discomfort, lost wages, diminished enjoyment of life, and other damages, prior to her death, due to the negligence of the Health Care Provider Defendants. As a result of Ms. Peitz's death, Claimants also incurred funeral expenses, which are also claimed as damages.

47.    All of the losses, damages, injuries, sustained by Ms. Peitz, including her death, were directly and proximately caused by the negligence of the Health Care Provider Defendants, without any negligence on the part of Ms. Peitz contributing thereto.

WHEREFORE, Claimant Daniel B. MacEwen, as Personal Representative of the Estate of Pamela S. Peitz, deceased, claims damages against the Health Care Provider Defendants in an amount to be determined by a jury, together with all costs.

## COUNT III – WRONGFUL DEATH CLAIM

48.    Claimants adopt and incorporate by reference herein all preceding paragraphs.

49.    As a result of the negligence of the Health Care Provider Defendants and the wrongful death of Pamela S. Peitz, Barrett M. Peitz, as the surviving son of Pamela S. Peitz, suffered severe mental anguish, emotional pain and suffering, and the loss of the society, companionship, comfort, protection, care, attention, advice, counsel, training, guidance, and education that the Decedent, Pamela S. Peitz, could have, and would have, afforded and rendered had she continued to live.

50.    By reasons of the actions of the Health Care Provider Defendants, which culminated in the death of the Decedent, Pamela S. Peitz, a cause of action has accrued in accordance with CP § 3-901, *et seq.* to Barrett M. Peitz, the surviving son of the Decedent, Pamela S. Peitz, for the compensation to him for all the damages, injuries and losses, which he sustained and which were caused by the actions of the Health Care Provider Defendants as previously set forth.

51.    All of the losses, damages, injuries, sustained by Ms. Peitz, including her death, were directly and proximately caused by the negligence of the Health Care Provider Defendants, without any negligence on the part of Ms. Peitz contributing thereto.

WHEREFORE, Claimant Barrett M. Peitz, as the surviving son of Pamela S. Peitz, deceased, claims damages against the Health Care Provider Defendants in an amount to be determined by a jury, together with all costs.

Paul D. Bekman
bekman@bmalawfirm.com
Aryeh M. Rabinowitz
rabinowitz@bmalawfirm.com
BEKMAN, MARDER & ADKINS, LLC
300 W. Pratt Street, Suite 450
Baltimore MD 21201
410-539-6633

Stephen G. Skinner
sskinner@skinnerfirm.com
SKINNER LAW FIRM
115 E. Washington Street
Charles Town, WV 25414

*Attorneys for Claimants*

RECEIVED
MAY 02 2018
HEALTH CARE
ALTERNATIVE DISPUTE
RESOLUTION OFFICE

| | | |
|---|---|---|
| DANIEL B. MACEWEN, *et al.* | * | IN THE |
| Claimant | * | HEALTH CARE |
| v. | * | ALTERNATIVE DISPUTE |
| MEDICAL PRACTICES OF ANTIETAM | * | RESOLUTION OFFICE |
| LLC, *et al.* | * | OF MARYLAND |
| Health Care Providers | * | HCA No.: |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\***

## ELECTION TO WAIVE ARBITRATION

Claimants, Daniel B. MacEwen, Personal Representative of the Estate of Pamela S. Peitz, deceased, and Barrett M. Peitz, surviving son of Pamela S. Peitz, deceased, by her attorneys, Paul D. Bekman, Aryeh M. Rabinowitz, and Bekman, Marder, and Adkins, LLC, Stephen G. Skinner, and the Skinner Law Firm, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-2A-06A, hereby waive the arbitration of the above-captioned claim to the United States District Court for the District of Maryland.

Respectfully submitted,

Paul D. Bekman
bekman@bmalawfirm.com
Aryeh M. Rabinowitz
rabinowitz@bmalawfirm.com
BEKMAN, MARDER & ADKINS, LLC
300 W. Pratt Street, Suite 450
Baltimore MD 21201
410-539-6633

Stephen G. Skinner
sskinner@skinnerfirm.com
SKINNER LAW FIRM
115 E. Washington Street
Charles Town, WV 25414

*Attorneys for Claimant*

| | | |
|---|---|---|
| DANIEL B. MACEWEN, *et al.* | * | IN THE |
| Claimants | * | HEALTH CARE |
| v. | * | ALTERNATIVE DISPUTE |
| MEDICAL PRACTICES OF ANTIETAM LLC, *et al.* | * | RESOLUTION OFFICE |
| | * | OF MARYLAND |
| Health Care Providers | * | HCA No.: |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF QUALIFIED EXPERT AND REPORT

I, DOUGLAS S. KATZ, M.D., hereby certify that I am board certified in Diagnostic Radiology, and that I am licensed to practice medicine in New York State.

I hereby certify that I have had clinical experience, provided consultation relating to clinical practice and/or taught in the field of diagnostic radiology within the five (5) years of the date of the alleged acts and omissions giving rise to this cause of action. This experience includes the reading, interpreting, and reporting of chest x-rays, and the proper communication of the findings of chest x-rays, such as the Claimant, Ms. Peitz, underwent.

I hereby certify that less than twenty percent (20%) of my professional duties are devoted to activities that directly involve testimony in personal injury claims.

I hereby certify that I have reviewed the diagnostic radiology images and reports from Diagnostic Radiology Images, LLC, and the death certificate.

I hereby certify that based on my training, expertise and review, the care and treatment rendered to Ms. Peitz by the Defendant Health Care Providers: Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health; Associated Radiologists, PA; Diagnostic Imaging Services, LLC; Narasim S. Murthy, M.D, breached the accepted standards of medical care. I

hereby certify that I have read the above and it is true and correct to the best of my knowledge,

information and belief.

DATED: ___4/22/18___

Douglas S. Katz, M.D.

04/22/2018   06:14   15166633884        RADIOLOGY FILE ROOM        PAGE   03/06

RECEIVED
MAY 02 2018
HEALTH CARE
ALTERNATIVE DISPUTE
RESOLUTION OFFICE

## REPORT RE: PAMELA S. PEITZ

I, Douglas S. Katz, M.D., incorporate by reference all that is contained in the Certificate of Qualified Expert which I have signed in this case.

I have reviewed the records as set forth in the Certificate of Qualified Expert.

Ms. Peitz was diagnosed with early-stage breast cancer in 2015. There was no evidence of any metastatic disease. She was scheduled to have a lumpectomy and radiation to treat the breast cancer. As part of the preoperative course for the lumpectomy, the surgical oncologist who was treating Ms. Peitz at the Meritus Center for Breast Health, and who was employed by the University of Maryland Medical Center, Dr. Susan Kesmodel, ordered a routine chest x-ray.

The chest x-ray was performed on April 28, 2015. It was read at the Meritus Center for Breast Health by an employee of Radiology Associates, PA and Diagnostic Imaging Services, LLC, Dr. Narasim Murthy. Dr. Murthy noted that:

> There is an irregularly marginated nodule seen overlying the RIGHT chest on the frontal view. This appears to be located posteriorly on the lateral view and is likely within the RIGHT lower lobe and measures 2.2 x 2.7 x 3.0 cm.

In his impressions, Dr. Murthy continued that there was a:

> Somewhat cavitary appearing oval poorly defined nodule within the RIGHT lower lobe measuring 2.2 x 3 x 2.7 cm. CT chest with contrast is suggested for further evaluation.

Despite Dr. Murthy identifying a mass in Ms. Peitz's right lung, and even though he thought it serious enough to suggest a further CT scan of the chest with contrast to evaluate the mass, Dr. Murthy, in violation of the standard of care, did not directly communicate his finding to the ordering physician, Dr. Kesmodel, or to the patient, Ms. Peitz. And, although Dr. Kesmodel, as the ordering physician, received a written copy of Dr. Murthy's report, as noted on the face of the report, she did not act in any way to inform Ms. Peitz of Dr. Murthy's finding, or

to conduct further studying and testing of the mass in Ms. Peitz's right lung.

Ms. Peitz underwent lumpectomy and radiation for her breast cancer in 2015. She did not have any further issues relating to her breast cancer.

In 2017, Ms. Peitz began to have trouble breathing, and developed flu-like symptoms, a cough, and fatigue. Her primary care physician sent her for a chest x-ray on April 14, 2017. The chest x-ray report compared the findings to the findings of the previous chest x-ray of April 28, 2015, and noted:

> Nodular mass involving the RIGHT lower lobe is again seen. This measures today 3.5 x 3.5 x 3.8 cm. Previously this had measured 2.8 x 2.2 x 3.2 cm, increased in size.

The impressions noted as well, that there was an:

> Increasing size RIGHT lower lobe pulmonary nodule or mass measuring currently 3.5 x 3.5 x 3.8 cm. Previously, this had measured, 2.8 x 2.2 x 3.2 cm, increased in size. Further evaluation with CT scan with contrast is suggested.

Ms. Peitz underwent a follow-up CT scan of the thorax with contrast on April 19, 2017. The scan found a mass in the superior segment of the lower right lobe measuring about 5 x 2.9 x 3.1 cm. There were also enlarged right hilar (2.4 x 1.8 cm) and subcarinal lymph nodes (2.0 x 1.8 cm and 1.8 x 1.2 cm), a pulmonary nodule in the right lower lobe measuring 7 x 6 mm, and possible atelectasis in the right lung. A biopsy of the masses showed that these lesions were uniquely lung cancer, and not a spreading of Ms. Peitz's earlier breast cancer. The scan also found a sclerotic lesion at L1 that was consistent with metastatic disease.

Subsequent testing showed that the lung cancer had metastasized to Ms. Peitz's spine (L1, L4, and L5, including the destruction of most of the right aspect of the L1 vertebral body), sacrum, and brain (lesions in both cerebellar hemispheres, left occipital lobe, left temporal lobe, right frontal lobe, and right parietal lobe). Ms. Peitz began radiation therapy with the prognosis

that she would die of metastatic lung cancer. Ms. Peitz died from her illness on March 9, 2018.

Dr. Murthy breached the standard of care with respect to his handling of the findings of the April 28, 2015 chest x-ray. The standard of care required that Dr. Murthy correctly read, interpret, report, and communicate the findings of the chest x-ray. While Dr. Murthy correctly identified the mass in Ms. Peitz's right lung, and included a notation of the mass in his report, he failed to properly communicate the findings of the chest x-ray to either the ordering physician, Dr. Kesmodel, or to the patient, Ms. Peitz. Therefore, it is my opinion to a reasonable degree of medical probability that this failure was a breach in the standard of care.

For the purposes of my opinions, I have assumed that Dr. Murthy was the agent, employee, or apparent agent of Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health; Associated Radiologists, PA; and Diagnostic Imaging Services, LLC.

These are my opinions as of the date of this report. As further information is acquired, I reserve the right to amend, alter, or supplement my opinions as appropriate. All of them are made to a reasonable degree of medical probability and are based on my training, expertise and review.

DATED: 4/22/18

Douglas S. Katz, M.D.

RECEIVED
MAY 02 2018
HEALTH CARE
ALTERNATIVE DISPUTE
RESOLUTION OFFICE

| | | |
|---|---|---|
| DANIEL B. MACEWEN, *et al.* | * | IN THE |
| Claimants | * | HEALTH CARE |
| v. | * | ALTERNATIVE DISPUTE |
| MEDICAL PRACTICES OF ANTIETAM LLC, *et al.* | * | RESOLUTION OFFICE |
| | * | OF MARYLAND |
| Health Care Providers | * | HCA No.: |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF QUALIFIED EXPERT AND REPORT

I, DAVID N. KRAG, M.D., hereby certify that I am board certified in Surgery, and that I am licensed to practice in Vermont.

I hereby certify that I have had clinical experience, provided consultation relating to clinical practice and/or taught in the field of surgical oncology within the five (5) years of the date of the alleged acts and omissions giving rise to this cause of action. This experience includes reviewing chest x-ray reports that were ordered by a surgical oncologist from a radiologist, informing and advising patients about the contents of the report, and diagnosing and treating cancer, such as the Claimant, Ms. Peitz, underwent.

I hereby certify that less than twenty percent (20%) of my professional duties are devoted to activities that directly involve testimony in personal injury claims.

I hereby certify that I have reviewed the following medical records of Ms. Peitz, which include, but are not limited to, the following: Meritus Center for Breast Health, Meritus Internal Medicine, John R. Marsh Cancer Center—Meritus Health, Antietam Oncology and Hematology Group, the radiology images and reports from Diagnostic Radiology Images, LLC, and the death certificate.

I hereby certify that I have reviewed the following medical records of Ms. Peitz, which include, but are not limited to, the following: Meritus Center for Breast Health, Meritus Internal Medicine, John R. Marsh Cancer Center—Meritus Health, Antietam Oncology and Hematology Group, the radiology images and reports from Diagnostic Radiology Images, LLC, and the death certificate.

I hereby certify that based on my training, expertise and review, the care and treatment rendered to Ms. Peitz by the Defendant Health Care Providers: Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health; University of Maryland Medical Center, LLC; and Susan B. Kesmodel, M.D., breached the accepted standards of medical care. I also certify that the breach of the standards of care by these Defendants, and Defendants Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health; Associated Radiologists, PA; Diagnostic Imaging Services, LLC, proximately caused harm to Ms. Peitz, and ultimately caused her death.

I hereby certify that I have read the above and it is true and correct to the best of my knowledge, information and belief.

DATED: 4/20/18

David N. Krag, M.D.



RECEIVED

MAY 0 2 2018

HEALTH CARE
ALTERNATIVE DISPUTE
RESOLUTION OFFICE

## REPORT RE:  PAMELA S. PEITZ

I, David N. Krag, M.D., incorporate by reference all that is contained in the Certificate of Qualified Expert which I have signed in this case.

I have reviewed the records as set forth in the Certificate of Qualified Expert.

Ms. Peitz was diagnosed with early-stage breast cancer in 2015. There was no evidence of any metastatic disease. She was scheduled to have a lumpectomy and radiation to treat the breast cancer. As part of the preoperative course for the lumpectomy, the surgical oncologist who was treating Ms. Peitz at the Meritus Center for Breast Health, and who was employed by the University of Maryland Medical Center, Dr. Susan Kesmodel, ordered a chest x-ray.

The chest x-ray was performed on April 28, 2015. It was read at the Meritus Center for Breast Health by an employee of Radiology Associates, PA and Diagnostic Imaging Services, LLC, Dr. Narasim Murthy. Dr. Murthy noted that:

> There is an irregularly marginated nodule seen overlying the RIGHT chest on the frontal view. This appears to be located posteriorly on the lateral view and is likely within the RIGHT lower lobe and measures 2.2 x 2.7 x 3.0 cm.

In his impressions, Dr. Murthy continued that there was a:

> Somewhat cavitary appearing oval poorly defined nodule within the RIGHT lower lobe measuring 2.2 x 3 x 2.7 cm. CT chest with contrast is suggested for further evaluation.

Despite Dr. Murthy identifying a mass in Ms. Peitz's right lung, and even though he thought it serious enough to suggest a further CT scan of the chest with contrast to evaluate the mass, Dr. Murthy did not directly communicate his finding to the ordering physician, Dr. Kesmodel, or to the patient, Ms. Peitz. And, although Dr. Kesmodel, as the ordering physician, received a written copy of Dr. Murthy's report, as noted on the face of the report, she did not act in any way to inform Ms. Peitz of Dr. Murthy's finding, or to conduct further studying and

testing of the mass in Ms. Peitz's right lung, in breach of the standard of care.

Ms. Peitz underwent lumpectomy and radiation for her breast cancer in 2015. She did not have any further issues relating to her breast cancer.

In 2017, Ms. Peitz began to have trouble breathing, and developed flu-like symptoms, a cough, and fatigue. Her primary care physician sent her for a chest x-ray on April 14, 2017. The chest x-ray report compared the findings to the findings of the previous chest x-ray of April 28, 2015, and noted:

> Nodular mass involving the RIGHT lower lobe is again seen. This measures today 3.5 x 3.5 x 3.8 cm. Previously this had measured 2.8 x 2.2 x 3.2 cm, increased in size.

The impressions noted as well, that there was an:

> Increasing size RIGHT lower lobe pulmonary nodule or mass measuring currently 3.5 x 3.5 x 3.8 cm. Previously, this had measured, 2.8 x 2.2 x 3.2 cm, increased in size. Further evaluation with CT scan with contrast is suggested.

Ms. Peitz underwent a follow-up CT scan of the thorax with contrast on April 19, 2017. The scan found a mass in the superior segment of the lower right lobe measuring about 5 x 2.9 x 3.1 cm. There were also enlarged right hilar (2.4 x 1.8 cm) and subcarinal lymph nodes (2.0 x 1.8 cm and 1.8 x 1.2 cm), a pulmonary nodule in the right lower lobe measuring 7 x 6 mm, and possible atelectasis in the right lung. A biopsy of the masses showed that these lesions were uniquely lung cancer, and not a spreading of Ms. Peitz's earlier breast cancer. The scan also found a sclerotic lesion at L1 that was consistent with metastatic disease.

Subsequent testing showed that the lung cancer had metastasized to Ms. Peitz's spine (L1, L4, and L5, including the destruction of most of the right aspect of the L1 vertebral body), sacrum, and brain (lesions in both cerebellar hemispheres, left occipital lobe, left temporal lobe, right frontal lobe, and right parietal lobe). Ms. Peitz began radiation therapy with the prognosis

that she would die of metastatic lung cancer. Ms. Peitz died from her illness on March 9, 2018.

Dr. Kesmodel breached the standard of care with respect to her handling of the findings of the April 28, 2015 chest x-ray. The standard of care required that Dr. Kesmodel, as the ordering physician, properly review the findings of the chest x-ray, which identified a mass in Ms. Peitz's right lung, and inform and advise Ms. Peitz of the findings, so that they could be addressed. Dr. Kesmodel did not do this. Although she, as the ordering physician, received a written copy of Dr. Murthy's report, as noted on the face of the report, she did not act in any way to inform Ms. Peitz of Dr. Murthy's findings, or conduct further studying and testing of the mass. Thus, it is my opinion to a reasonable degree of medical probability that these failures were breaches in the standards of care.

The deviations from the standards of care by all of the Defendants were a proximate cause of injury to Ms. Peitz. If Dr. Kesmodel had followed the standard of care, and properly reviewed the findings of the chest x-ray taken on April 28, 2015 and addressed the findings of a lung mass accordingly, Ms. Peitz would not have undergone the course that she did, ultimately causing her death. The mass in her right lung would have been treated when it was 2.2 x 2.7 x 3.0 cm, rather than it was 5 x 2.9 x 3.1 cm, and before there was any metastasis to her spine, sacrum, and brain. She would have been treated when she had early-stage lung cancer, rather than when she had Stage 4 lung cancer. Her chance of survival in April 2015 would have been greater than 50%, instead of the far less than 50% chance of survival that she had once the mass was reported out in April 2017. And, for the same reasons, if Dr. Murthy had properly communicated the findings of the chest x-ray to Dr. Kesmodel or Ms. Peitz, then Ms. Peitz would not have undergone the course that she did, ultimately causing her death.

For the purposes of my opinions, I have assumed that Dr. Murthy was the agent, employee, or apparent agent of Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health; Associated Radiologists, PA; and Diagnostic Imaging Services, LLC. I have also assumed that Dr. Kesmodel was the agent, employee, or apparent agent of Medical Practices of Antietam, LLC, t/a Meritus Center for Breast Health, and University of Maryland Medical Center, LLC.

These are my opinions as of the date of this report. As further information is acquired, I reserve the right to amend, alter, or supplement my opinions as appropriate. All of them are made to a reasonable degree of medical probability and are based on my training, expertise and review.

DATED: 4/20/18

David N. Krag, M.D.